UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

CHUZA OIL COMPANY,                                    Case No. 18-11836-t7
                                                      Chapter 7

     Debtor.

_____

PHILIP J. MONTOYA, Chapter 7 Trustee of the
bankruptcy Estate of Chuza Oil Company,

     Plaintiff,

v.                                                    Adv. Proc._____

ROBERT "BOBBY" GOLDSTEIN,

     Defendant.


### COMPLAINT FOR BREACH OF FIDUCIARY DUTY, FRAUDULENT AND VOIDABLE TRANSACTIONS OR IN THE ALTERNATIVE, PREFERENTIAL TRANSFER

Philip J. Montoya (the "**Trustee**" or the "**Plaintiff**"), as Chapter 7 trustee of the

bankruptcy estate of Chuza Oil Company, LLC, through his attorneys Askew & White, LLC

f/k/a Askew & Mazel, LLC (Daniel A. White and Benjamin A. Jacobs), states for his complaint

against defendant Robert "Bobby" Goldstein (the "**Defendant**"), as follows:

### JURISDICTION AND VENUE

1.     On July 25, 2018 (the "**Involuntary Petition Date**"), an *Involuntary Petition*

*Against a Non-Individual* (Doc. No. 1 in the main bankruptcy case) was filed against Chuza Oil

Company (the "**Debtor**") under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §

101, *et. seq.* (the "**Bankruptcy Code**").

1

2.     The Involuntary Petition Date is the date of filing the petition within the meaning of § 547 of the Bankruptcy Code.

3.     On August 27, 2018, the Court entered an *Order for Relief in an Involuntary Bankruptcy* (Doc. No. 16 in the main bankruptcy case) (the "**Order for Relief**").

4.     On September 4, 2018, *a Notice of Appointment of Trustee* (Doc. No. 18 in the main bankruptcy case) was filed by the United States Trustee, giving notice of the appointment of Philip J. Montoya as chapter 7 trustee of the Debtor's bankruptcy case, and the Plaintiff continues to serve in that capacity.

5.     The Bankruptcy Case is pending as a chapter 7 in the United States Bankruptcy Court for the District of New Mexico as case number 18-11836-t7.

6.     The Debtor is a New Mexico corporation.

7.     Upon information and belief, the Defendant is an individual residing in Dallas County, Texas.

8.     The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and/or 157.

9.     All Counts of this action are core proceedings under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(F) and/or other applicable law.

10.     Venue in this district is proper under 28 U.S.C. §§ 1408 and/or 1409.

11.     Plaintiff consents to entry of final orders or judgment by the bankruptcy court.

12.     During the course of this adversary proceeding, the Trustee may learn (through discovery or otherwise) of additional causes of action against the Defendant.  It is the Trustee's intention to pursue all available causes of action against the Defendant.  The Trustee reserves the right to amend this original Complaint to include: (i) modifications or revisions to Defendant's

2

name, (ii) additional Defendant(s), (iii) additional transfers, or (iv) additional causes of action (collectively, the "**Amendments**") that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for all Amendments to relate back to this original Complaint.

## <u>GENERAL ALLEGATIONS</u>

13.     On October 3, 2014, the Debtor filed a voluntary petition for relief under chapter 11 of the bankruptcy code, initiating Case No. 14-12842-t11 in the United States Bankruptcy Court for the District of New Mexico (the "**Chapter 11 Case**").

14.     On March, 20, 2016, in the Chapter 11 Case, this Court entered an *Order Confirming Debtor's Third Amended Plan of Reorganization, Dated October 16, 2015* (Doc. No. 431) (the "**Confirmation Order**").

15.     The Confirmation Order approved the *Debtor's Third Plan of Reorganization, Dated October 16, 2015* (Doc. No. 401 in the Chapter 11 Case), filed by the Debtor on March 2, 2016, as modified by the Confirmation Order (as modified, the "**Plan**").

16.     Under the Plan, the Defendant retained his equity interest in the Debtor.

17.     The disclosure statement for the Plan recites that Defendant is "[t]he Debtor's CEO" and that the Defendant "has a 70.9% interest in the Debtor." (Doc. No. 402 in the Chapter 11 Case, p. 5).

18.     The disclosure statement for the Plan recites that Patrick Padilla, the Debtor's former president, resigned effective May 31, 2015 (Doc. No. 402 in the Chapter 11 Case, p. 5).

19.     The disclosure statement for the Plan provides that the Debtor "anticipates Bobby Goldstein will remain the CEO post-petition" (Doc. No. 402 in the Chapter 11 Case, p. 6).

20.     The Plan became effective on March 16, 2016 (the "**Effective Date**").

3

21.     On June 20, 2017, Chuza Acquisition, LLC and Guizot, LLC, creditors of the Debtor, filed a *Complaint for Breach of Contract, Acceleration and Foreclosure of Secured Promissory Note, Conversion, Fraud, Violations of New Mexico's Oil and Gas Payment Act, and Claim for Accounting* (the "**Guizot Complaint**") against the Debtor and the Defendant, initiating Case No. D-1116-CV-2017-00842.

22.     The Guizot Complaint alleged, *inter alia,* that the Debtor failed to timely pay Chuza Acquisition, LLC under a note issued to it in connection with the Plan, and that the Debtor had failed to pay Guizot, LLC as required by law on its 100% overriding royalty interest in Wells 73 and 74 of the Northeast Hogback Unit, which allegedly amounted to conversion by the Debtor and the Defendant.

23.     The Guizot Complaint remains pending.

## RELATION OF THE DEFENDANT TO THE DEBTOR

24.     On the Effective Date, the Defendant owned and controlled the Debtor as its majority shareholder and CEO.

25.     Upon information and belief, at all relevant times, the Defendant was the Debtor's President and Secretary.

26.     Upon information and belief, at all relevant times, the Defendant was the Debtor's sole officer and director.

27.     The Defendant is a former private practice attorney.

28.     On March 30, 2018, the Defendant sent an e-mail to the Debtor's shareholders requesting that they "please accept his resignation from chuza oil company [sic]."

29.     The Defendant's March 30, 2018 e-mail cited a lack of capital and loss of faith in his ability to "resurrect" the Debtor as the reasons for his attempted resignation.

4

30.    Upon information and belief, no legal document was executed terminating the Defendant as an officer or director of the Debtor.

31.    The Defendant is currently identified as the President and Secretary of the Debtor on the New Mexico Secretary of State's Website.

32.    The Defendant's attempt to resign as an officer and director of the Debtor was not effective.

33.    In the main bankruptcy case, the Defendant initially cited his attempted resignation as a basis for failing to appear at the § 341 meeting in this case.

### THE TRANSFERS

34.    Between the Effective Date and August 9, 2018, the Defendant transferred at least $58,157.33 to the Debtor.

35.    Between the Effective Date and August 9, 2018, the Defendant's mother Paula Goldstein transferred approximately $99,853.88 to the Debtor.

36.    Between the Effective Date and August 9, 2018, the Defendant's company Bobby Goldstein Productions, Inc. ("**BGPI**") transferred approximately $880,344.26 to the Debtor.

37.    The Debtor did not repay Paula Goldstein in full.

38.    The Debtor did not repay Bobby Goldstein Productions, Inc. in full.

39.    Between the Effective Date and August 9, 2018, the Defendant transferred at least $152,481.88 to himself from the Debtor.

40.    In addition, during the year 2017, the Debtor incurred charges for $17,655.00 in point-of-sale purchases, payments to taxing authorities by check, and transaction fees that are categorized on the Debtor's 2017 general ledger as distributions to the Defendant.

41.    The Transfers from the Debtor to the Defendant were not regular.

5

42.     The Defendant is an insider of the Debtor within the meaning of that term under 11 U.S.C. 101(31).

43.     Upon information and belief, the Defendant did not have a set salary for his work for the Debtor.

44.     Upon information and belief, the Defendant performed services for the Debtor in the hope of increasing the value of his equity interest therein, rather than for a salary.

45.     The transfers and distributions from the Debtor to Defendant, net of the transfers from the Defendant to the Debtor, $115,979.55, are defined as the "**Transfers**."

## CHUZA POST-CONFIRMATION

46.     At all relevant times it was in operation, the Debtor's line of business was to be an operator on oil and gas wells.

47.     At all relevant times, the Debtor was required to submit monthly reports to the Oil Conservation Division of the State of New Mexico (the "**OCD Reports**"), also known as C-115s.

48.     The Debtor failed to submit the OCD Reports for the wells it operated for the month of December 2016 and thereafter.

49.     Upon information and belief, around the time of the Defendant's attempted resignation, the Debtor ceased maintaining its oil and gas wells.

50.     By at least December 2016, Defendant knew or should have known that the Debtor's reorganization efforts were in serious trouble.

51.     On June 22, 2017, the Oil Conservation Division of the State of New Mexico revoked the Debtor's authority to transport from or inject into any wells operated by the Debtor, as a result of the Debtor's failure to file the OCD reports.

6

52.    After June 22, 2017, Defendant knew or should have known that the Debtor's reorganization could not succeed without a significant change.

53.    Upon information and belief, despite the revocation of the Debtor's authority, the Defendant continued to have the Debtor sell oil from its wells for an unknown time period.

54.    On August 22, 2017, the Debtor received a payment of $6,234.74 from Pacer Energy for the sale of its oil.

55.    On September 21, 2017, the Debtor received a payment of $6,335.25 from Pacer Energy for the sale of its oil.

56.    After the September 21, 2017 payment from Pacer Energy, the Debtor had no income from operations.

57.    After the September 21, 2017 payment from Pacer Energy, the Debtor had no further material income besides transfers from the Defendant, BGPI and Paula Goldstein.

58.    As set forth above, on May 30, 2018, while the Guizot Complaint was being litigated, the Defendant attempted to resign as officer and director of the Debtor.

59.    On the day of the Defendant's attempted resignation, May 30, 2018, the Debtor had $56.10 in its bank account.

60.    By the time the Defendant attempted to resign as officer and director of the Debtor, the Debtor had been completely drained of capital, and had no funds with which to address its numerous problems.

## COUNT 1
## BREACH OF FIDUCIARY DUTY

61.    The Trustee re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

62.     The Internal Revenue Service defines a closely held corporation as a corporation which "[h]as more than 50% of the value of its outstanding stock owned (directly or indirectly) by 5 or fewer individuals at any time during the last half of the tax year and isn't a personal services corporation."[1]

63.     At all relevant times, one individual, the Defendant, owned more than 50% of the Debtor's outstanding stock.

64.     The Debtor is not a personal services corporation.

65.     At all relevant times, the Debtor was a closely-held corporation.

66.     As a shareholder in a closely-held corporation, the Defendant owed a fiduciary duty to the Debtor.

67.     As an officer of the Debtor, the Defendant owed the Debtor a fiduciary duty.

68.     As a director of the Debtor, the Defendant owed the Debtor a fiduciary duty.

69.     At all relevant times, the Debtor was insolvent.

70.     As an officer of an insolvent corporation, the Defendant owed a heightened fiduciary duty to the Debtor.

71.     As a former private practice attorney, the Defendant knew or should have known that he owed fiduciary duties to the Debtor and the Debtor's creditors.

72.     Under NMSA 53-11-50(A), the Debtor was required to keep "correct and complete books and records of account."

73.     The Defendant, as sole officer and director of the Debtor, failed to keep an accurate well deck.

74.     Under NMSA 53-11-50(A), the Debtor was required to keep "minutes of the proceedings of its shareholders and board of directors."

---

[1] https://www.irs.gov/faqs/small-business-self-employed-other-business/entities/entities-5

75.     The Defendant, as sole officer and director of the Debtor, failed to keep minutes of meetings of its board of directors.

76.     The Defendant, as sole officer and director of the Debtor, failed to properly document loans the Debtor was receiving from insiders of the Debtor, including the Defendant, BGPI and Paula Goldstein.

77.     The Defendant, as sole officer and director of the Debtor, caused the Debtor not to file required OCD Reports.

78.     The Defendant, as sole officer and director of the Debtor, caused the Debtor to fail to maintain its oil and gas wells.

79.     Defendant, as sole officer and director of the Debtor, caused the Debtor to fail to keep its oil and gas leases in good standing.

80.     The Defendant, as sole officer and director of the Debtor, attempted to resign rather than conduct a proper wind-down of the Debtor's operations and business.

81.     The Defendant, as sole officer and director of the Debtor, caused the Debtor to make distributions to shareholders while the Debtor was insolvent, or that caused the Debtor to become insolvent.

82.     As a result of the acts set forth above, the Defendant breached his fiduciary duty to the Debtor.

83.     As a result of the acts set forth above, the Defendant breached his fiduciary duty to the Debtor's creditors.

84.     Defendant is liable to the Debtor's bankruptcy estate for his breach of fiduciary duty in an amount to be determined at trial.

85.     Defendant's breach of fiduciary duty was willful, wanton, malicious and/or aggravated.

86.     Upon information and belief, the Debtor's breach of fiduciary duty arose from personal animosity towards Chuza Acquisition, LLC and Guizot, LLC due to the Guizot Complaint.

87.     The Debtor is entitled to recover punitive damages from the Defendant in an amount to be determined at trial for his breach of fiduciary duty.

## COUNT 2
## NEGLIGENCE

88.     The Trustee re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

89.     The Defendant owed a duty to exercise the degree of care that an ordinarily prudent person in a like positions would exercise under similar circumstances.

90.     In his actions and inactions, the Defendant was negligent in failing to perform his duties with the requisite degree of diligence, care, and skill that ordinarily prudent persons in like positions would exercise under the circumstances.

91.     The Defendant owed a duty to use reasonable care, skill and diligence in the performance of his duty to keep books and records.

92.     The Defendant owed a duty to use reasonable care, skill and diligence in the keeping of an accurate well deck.

93.     The Defendant owed a duty to use reasonable care, skill and diligence in the keeping of minutes of the proceedings of the Debtor's shareholders and board of directors.

94.     The Defendant owed a duty to use reasonable care, skill and diligence in the keeping minutes of the meetings of the Debtor's board of directors.

95.     The Defendant owed a duty to use reasonable care, skill and diligence in documenting loans the Debtor was receiving from insiders of the Debtor, including the Defendant, BGPI and Paula Goldstein.

96.     The Defendant owed a duty to use reasonable care, skill and diligence in filing OCD reports.

97.     The Defendant owed a duty to use reasonable care, skill and diligence in maintaining oil and gas wells.

98.     The Defendant owed a duty to use reasonable care, skill and diligence in keeping oil and gas leases in good standing.

99.     The Defendant owed a duty to use reasonable care, skill and diligence in conducting a proper wind-down of the Debtor's operations and business.

100.    The Defendant owed a duty to use reasonable care, skill and diligence in making distributions to shareholders while the Debtor was insolvent, or that would cause the Debtor to become insolvent.

101.    As an officer of an insolvent corporation, the Defendant owed a duty to use, reasonable care, skill and diligence in exercising his fiduciary duties to creditors.

102.    The Defendant was negligent in his actions and inactions by failing to keep books and records.

103.     The Defendant was negligent in his actions and inactions by failing to keep an accurate well deck.

104.    The Defendant was negligent in his actions and inactions by failing to keep minutes of the proceedings of the Debtor's shareholder and board of directors.

105. The Defendant was negligent in his actions and inactions by failing to keep minutes of the meetings of the Debtor's board of directors.

106. The Defendant was negligent in his actions and inactions by failing to document loans the Debtor was receiving from insiders of the Debtor, including the Defendant, BGPI and Paula Goldstein.

107. The Defendant was negligent in his actions and inactions by failing to file OCD reports.

108. The Defendant was negligent in his actions and inactions by failing to maintain oil and gas wells.

109. The Defendant was negligent in his actions and inactions by failing to keep oil and gas leases in good standing.

110. The Defendant was negligent in his actions and inactions by failing to conduct a proper wind-down of the Debtor's operations and business.

111. The Defendant was negligent in his actions by making distributions to shareholders while the Debtor was insolvent, or that caused the Debtor to become insolvent.

112. The Defendant was negligent in his actions by failing to perform, as an officer of an insolvent corporation, his fiduciary duties owed to creditors.

113. The Defendant is not entitled to the application of the business judgment rule because each of the Defendant's actions or inactions that form the basis of the negligence claim were not made in good faith, were not in the best interests of the corporation, or were made without the Defendant being reasonably well-informed.

114. As a direct and proximate results of the Defendant's negligence, the Debtor ceased operations, lost assets and revenue, and failed to pay debts owed to its creditors.

115.    The Plaintiff seeks damages for Defendant's negligence in an amount to be proven at trial.

## COUNT 3
## VOIDABLE TRANSFERS PURSUANT TO NEW MEXICO UNIFORM VOIDABLE TRANSACTIONS ACT § 56-10-18(A)(1) AND OR 11 U.S.C. §§ 544, 550(a), AND 551

116.    The Trustee re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

117.    At all relevant times there was, and is, at least one or more creditors, as defined in § 56-10-15(D) of the NM Uniform Voidable Transactions Act, who held and hold matured or unmatured unsecured claims against the Debtor that were, and are, allowable under § 502 of the Bankruptcy Code or that were, and are not, allowable only under § 502(e).

118.    Each of the Transfers constitute a transfer by the Debtor in property within the meaning of § 56-10-15(L) of the NM Uniform Voidable Transactions Act.

119.    The Transfers were made to an insider.

120.    Before many of the Transfers were made, the Debtor had been sued.

121.    Before many or all of the Transfers were made, the Debtor had been threatened with suit.

122.    The Debtor was insolvent at the time that each of the Transfers were made.

123.    The Debtor attempted to abscond.

124.    The Transfers were made by the Debtor with the actual intent to hinder, delay or defraud the creditors of the Debtor.

125.    The Transfers were made to or for the benefit of the Defendant.

126.    As a result of the foregoing, pursuant to § 56-10-18(A)(1) of the NM Uniform Voidable Transactions Act and §§ 544(b), 550(a), and 551 of the Bankruptcy Code, the Trustee

13

is entitled to judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; and (c) recovering the Transfer, or the value thereof, from the Defendant for the benefit of the Debtor's bankruptcy estate.

**COUNT 4**
**VOIDABLE TRANSFERS PURSUANT TO THE NEW MEXICO VOIDABLE**
**TRANSACTIONS ACT § 56-10-18(A)(2) AND/OR 11 U.S.C. §§ 544, 550(a), AND 551**

127.    The Trustee re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

128.    At all relevant times there was, and is, at least one or more creditors, as defined in § 56-10-15(D) of the NM Voidable Transactions Act, who held and hold matured or unmatured unsecured claims against the Debtor that were, and are, allowable under § 502 of the Bankruptcy Code or that were, and are not, allowable only under § 502(e).

129.    The Debtor did not receive reasonably equivalent value in exchange for the Transfers.

130.    The Transfers were made without the Debtor receiving reasonable equivalent value in exchange for the Transfer.

131.    At all relevant times, the Debtor was engaged in business for which its remaining assets were unreasonably small.

132.    At all relevant times, the Debtor intended to incur, believed, or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

133.    As a result of the foregoing, pursuant to § 56-10-18(A)(2) of the NM Uniform Voidable Transactions Act and §§ 544(b), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; and (c) recovering the Transfer, or the value thereof, from the Defendant for the

benefit of the Debtor's bankruptcy estate.

## COUNT 5
## VOIDABLE TRANSFERS PURSUANT TO THE NEW MEXICO UNIFORM VOIDABLE TRANSACTIONS ACT § 56-10-19(A) AND OR 11 U.S.C. §§ 544, 550(a), AND 551

134.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

135.    At all relevant times there was, and is, at least one or more creditors, as defined in § 56-10-15(D) of the NM Uniform Voidable Transactions Act, who held and hold matured or unmatured unsecured claims against the Debtor that were, and are, allowable under § 502 of the Bankruptcy Code or that were, and are not, allowable only under § 502(e).

136.    The Debtor did not receive reasonably equivalent value in exchange for the Transfers.

137.    At the time of the Transfers, the Debtor was insolvent or became insolvent as a result of the transfer.

138.    As a result of the foregoing, pursuant to § 56-10-19(A) of the NM Uniform Voidable Transactions Act and §§ 544(b), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; and (c) recovering the Transfer, or the value thereof, from the Defendant for the benefit of the Debtor's bankruptcy estate.

## COUNT 6
## IN THE ALTERNATIVE, VOIDABLE TRANSFERS PURSUANT TO THE NEW MEXICO UNIFORM VOIDABLE TRANSACTIONS ACT § 56-10-19(B) AND OR 11 U.S.C. §§ 544, 550(a), AND 551

139.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

15

140. At all relevant times there was, and is, at least one or more creditors, as defined in § 56-10-15(D) of the NM Uniform Voidable Transactions Act, who held and hold matured or unmatured unsecured claims against the Debtor that were, and are, allowable under § 502 of the Bankruptcy Code or that were, and are not, allowable only under § 502(e).

141. At the time of the Transfers, the Debtor was insolvent, in part because its debts were greater than its assets.

142. The Transfers were made to an insider.

143. In the alternative, the Transfers were made for an antecedent debt.

144. At the time of the Transfers, the Defendant had reasonable cause to believe the Debtor was insolvent.

145. As a result of the foregoing, pursuant to § 56-10-19(B) of the NM Uniform Voidable Transactions Act and §§ 544(b), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; and (c) recovering the Transfer, or the value thereof, from the Defendant for the benefit of the Debtor's bankruptcy estate.

### COUNT 7
### FRAUDULENT TRANSFER
### 11 U.S.C. §§ 548(a)(1)(A), 550 and 551

146. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

147. The Transfers occurred within two years before the Petition Date.

148. The Transfers were made with the actual intent to hinder, delay and defraud some or all of Debtors' then existing or future creditors.

149.    The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Defendant pursuant to 11 U.S.C. § 550(a).

## COUNT 8
## FRAUDULENT TRANSFER
## 11 U.S.C. §§ 548(a)(1)(B), 550, AND 551

150.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

151.    The Transfers occurred within two years before the Petition Date.

152.    The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

153.    At the time of the Transfers, the Debtor was insolvent.

154.    At the time of the Transfers, the Debtor was engaged in a business for which any property remaining with the Debtor was an unreasonably small capital.

155.    At the time of the Transfers, the Debtor intended to incur, or believed that it would incur, debts beyond their ability to pay as such debts matured.

156.    The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to § 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Defendant pursuant to 11 U.S.C. § 550(a).

## COUNT 9
## ALTERNATIVELY, PREFERENTIAL TRANSFERS (11 U.S.C. §§ 547, 550, 551)

157.    The Trustee re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

158.    At least $27,510.97 of the Transfers occurred within the one (1) year period preceding the filing of the above-captioned bankruptcy case (the "**One-Year Transfers**").

17

159.    In the alternative, the One-Year Transfers were intended as repayment of monies lent to the Debtor by BGPI.

160.    Upon information and belief, the Defendant owns or controls all or a part of BGPI.

161.    In the alternative, the One-Year Transfers were made for or on account of an antecedent debt.

162.    In the alternative, at the time of the One-Year Transfers, BGPI was a creditor of the Debtor within the meaning of 11 U.S.C. § 101(10).

163.    In the alternative, the One-Year Transfers were made for the benefit of BGPI.

164.    In the alternative, the One-Year Transfers were on account of an antecedent debt owed by the Debtor to BGPI.

165.    The One-Year Transfers were made while the Debtor was insolvent.

166.    In the alternative, the One-Year Transfers entitled BGPI to receive more than it would receive if (i) as a case under chapter 7 of the Bankruptcy Code (ii) the One-Year Transfers had not been made, and (iii) BGPI received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

167.    In the alternative, the One-Year Transfers constitute preferential transfers avoidable by the Plaintiff pursuant to 11 U.S.C. § 547 and recoverable from the Defendant under 11 U.S.C. § 550(a).

168.    Upon avoidance, the One-Year Transfers should be automatically preserved for the benefit of the estate under 11 U.S.C. § 551.

**COUNT 10**
**IN THE ALTERNATIVE, PERSONAL LIABILITY OF DIRECTOR**
**FOR IMPROPER DISTRIBUTION**
**NEW MEXICO CORPORATION ACT §§ 53-11-44 AND 53-11-46**

169. The Trustee re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

170. The Transfers were in the nature of a distribution to the Defendant as shareholder of the Debtor.

171. After effect of the Transfers, the Debtor was unable to pay its debts as they became due in the usual course of the Debtor's business.

172. The Defendant, acting as a director of the Debtor, voted for or assented to the Transfers as a distribution contrary to the provisions of the Business Corporation Act.

173. The Defendant is liable to the Debtor for the amount of the dividend paid or the value of the distribution in excess of the amount of the distribution which could have been made without a violating the provisions of the Business Corporation Act.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, as follows:

A. On Count 1, breach of fiduciary duty, awarding Plaintiff consequential and punitive damages in an amount to be determined at trial, pre-judgment and post-judgment interest;

B. On Count 2, negligence, awarding Plaintiff damages in amount to be determined at trial, pre-judgment and post-judgment interest;

C. On Count 3, pursuant to New Mexico Voidable Transactions Act § 56-10-18(A)(1) and/or §§ 544(b), 550(a), and 551 of the Bankruptcy Code: (a) avoiding and preserving

19

the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers, or the value thereof, from the Defendant for the benefit of the Debtor's bankruptcy estate;

D.       On Count 4, pursuant to New Mexico Voidable Transactions Act § 56-10-18(A)(2) and/or §§ 544(b), 550, and 551 of the Bankruptcy Code: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers, or the value thereof, from the Defendant for the benefit of the Debtor's bankruptcy estate;

E.       On Count 5, pursuant to New Mexico Voidable Transactions Act § 56-10-19(A) and/or §§ 544(b), 550, and 551 of the Bankruptcy Code: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers, or the value thereof, from the Defendant for the benefit of the Debtor's bankruptcy estate;

F.       In the alternative, on Count 6, pursuant to New Mexico Voidable Transactions Act § 56-10-19(B) and/or §§ 544(b), 550, and 551 of the Bankruptcy Code: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers, or the value thereof, from the Defendant for the benefit of the Debtor's bankruptcy estate;

G.       On Count 7, pursuant to §§ 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers from the Defendant for the benefit of the estate;

H.       On Count 8, pursuant to §§ 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers from the Defendant for the benefit of the estate;

I.       In the alternative, on Count 9, avoidance of preferential transfers, pursuant to 11 U.S.C. §§ 547, 550 and 551, (i) avoiding and preserving the Transfers, (ii) directing that the

Transfers be set aside, and (iii) recovering the Transfers, or the value thereof, from the Defendant for the benefit of the Debtor's estate;

J.     In the alternative, on Count 10, director liability for improper distribution under the New Mexico Business Corporation Act §§ 53-11-44 and 53-11-46, awarding Plaintiff damages in an amount to be determined at trial, pre-judgment and post-judgment interest; and

K.     Plaintiff further respectfully requests that the judgment entered by the Court award Plaintiff all applicable interest, including but not limited to both pre-judgment and post-judgment interest, costs, attorneys' fees and disbursements in this action, and further relief as the Court deems just and proper.

Respectfully submitted,

ASKEW & WHITE, LLC

By: *s/ filed electronically*
      Daniel A. White
      Benjamin A. Jacobs
      1122 Central Ave. SW, Ste 1
      Albuquerque, NM 87102
      Telephone: 505.433.3097
      Facsimile: 505.717.1494
      dwhite@askewwhite.com
      bjacobs@askewwhite.com
      *Counsel for the chapter 7 trustee*

21